UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KEVIN B.,

           Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.

CASE NO. C22-5265-BAT

**ORDER REVERSING AND REMANDING THE COMMISSIONER'S DECISION**

Plaintiff appeals the ALJ's decision finding him not disabled. He contends the ALJ erred in identifying his impairments at step two, in assessing Dr. Widlan's opinions, and in entering step-five findings. Dkt. 10 at 1. For the reasons below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff applied for benefits in August 2016. The ALJ held a hearing in August 2018 and issued a decision finding Plaintiff not disabled. The Appeals Council granted review and remanded the matter for further administrative proceedings. On remand, the ALJ held a hearing in January 2021, and issued another decision in March 2021 finding Plaintiff not disabled. The

Appeals Council denied review making the ALJ's 2021 decision the Commissioner's final decision.

## DISCUSSION

A.   **Step Two Determinations**

    1.   Personality Disorder

At step two, the ALJ listed personality disorder as a severe impairment in both the prior and present decisions. The Appeals Council remanded the prior decision noting Plaintiff's personality disorder was diagnosed as "rule-out" only, Tr. 187, and instructing the ALJ to reconsider on remand Plaintiff's mental impairments. But the ALJ again listed personality disorder as a severe impairment without addressing the rule-out diagnosis or otherwise explicitly addressing the Appeals Council's instructions. *See* Tr. 19.

Plaintiff contends the ALJ erred in including personality disorder at step two without responding to the Appeals Council's order. Dkt. 10 at 9-10. The ALJ plainly failed to respond to the Appeals Council's order. However, Plaintiff fails to show this failure prejudiced him by leading to a Residual functional capacity (RFC) determination that failed to account for all limitations or undermining the ALJ's other findings in the five step disability evaluation process. Accordingly, the Court concludes this error is harmless. *See Johnson v. Shalala*, 60 F.3d 1428, 1436 n.9 (9th Cir. 1995) ("overinclusion of debilitating factors is harmless").

    2.   Cervical Strain

The ALJ found at step two Plaintiff's cervical strain is medically determinable but not severe in light of "benign" objective findings, Plaintiff's minimal treatment for this condition, and how Plaintiff could perform light household chores, burn wood, and fish. Tr. 19.

Plaintiff argues the ALJ erred in holding his minimal treatment against him. Dkt. 10 at 5.

ORDER REVERSING AND REMANDING THE COMMISSIONER'S
DECISION - 2

Plaintiff contends his cervical strain originated with a workplace injury in 2007 and when he experienced another workplace injury to his lumbar spine in 2013, Washington's workers' compensation system provided treatment only for the more recent workplace injury because the 2007 claim had been closed. *Id*. Because his cervical strain was not directly related to his subsequent claim for lumbar spine injury, the workers' compensation program would not provide treatment for the cervical strain. *Id*. (citing a 2018 treatment note).

The treatment note Plaintiff cites indicates Plaintiff's cervical strain is not related to his subsequent lumbar spine injury, but it instructs him to undergo a reopening examination to see if his cervical sprain was reaggravated by the lumbar spine injury. Tr. 922-26. Plaintiff subsequently underwent an independent medical examination in October 2018 where both his lumbar spine and cervical spine conditions were considered, along with his other conditions, and the examiner found that Plaintiff's conditions were disabling. *See* Tr. 979-1004. The ALJ discounted the conclusion Plaintiff's cervical condition caused disabling limitations because the record contains minimal evidence of treatment or complaints related to this condition. Tr. 34-35.

On the contrary, Plaintiff did complain of pain and limitations related to his cervical condition. *See* Tr. 905-15, 940-44, 955-57, 979-99, 1026-43. Moreover, even assuming the ALJ was correct Plaintiff's cervical condition was not severe, the ALJ was nonetheless required to consider the limitations caused by this medically determinable condition when assessing Plaintiff's RFC. *See* 20 C.F.R. § 404.1545(e). The ALJ did not properly account for Plaintiff's cervical-related limitations in the RFC assessment.[1] *See* Dkt. 10 at 6. Specifically, several

---

[1] Although the Commissioner contends that Plaintiff did not identify any specific limitations that "were lacking in the RFC" (Dkt. 13 at 4), Plaintiff specifically asserted that the ALJ omitted restrictions related to handling, fingering, grasping, reaching, and lifting. *See* Dkt. 10 at 6. The ALJ's RFC assessment does include a lifting restriction consistent with light work but does not address the other limitations. Tr. 22.

DECISION - 3

manipulative and reaching limitations were referenced in a June 2019 functional capacities evaluation report, but the ALJ did not incorporate them into the RFC assessment. *Compare* Tr. 22 *with* Tr. 1026-43. The ALJ indicated he discounted the functional capacities evaluation report to the extent it considered Plaintiff's deconditioning and focused on Plaintiff's symptoms rather than limitations (Tr. 36), but the manipulative and reaching limitations are not based on either deconditioning or a symptom focus. Instead, the evaluator references, *inter alia*, Plaintiff's reduced grip strength, hand tool dexterity testing, and abnormal sensation testing. *See* Tr. 1026-43. The ALJ's reasons to discount the functional capacity evaluation do not apply to the manipulative/reaching limitations referenced, and thus the ALJ erred in failing to account for these limitations that resulted from Plaintiff's cervical condition, even if that cervical condition had been properly found not severe.

On remand, the ALJ shall reconsider the evidence of the limitations related to Plaintiff's cervical condition at step two, in the RFC assessment, and at any other part of the decision as necessary.

**C.    Opinion of David Widlan, Ph.D.**

Plaintiff also contends the ALJ misevaluated the opinions of Dr. Widlan. Dr. Widlan examined Plaintiff in January 2017 and his medical source statement reads as follows:

> [Plaintiff] suffers from significant depression and anxiety. The Mental Status Examination indicated moderate deficits in memory, concentration, and social

---

The ALJ's decision references Plaintiff's allegation of difficulty using his hands, which could implicate Plaintiff's cervical-related condition. *See* Tr. 30-31. The ALJ states that Plaintiff's allegations are inconsistent with his reported ability to perform light household chores, burn wood, and fish, as well his completion of keyboarding classes. *Id*. Plaintiff reported pain with household chores and fishing (Tr. 470-72) that limited his ability to complete those activities, and further reported that it was the keyboarding classes that aggravated his cervical condition, however, and the ALJ's decision does not acknowledge this. *See* Tr. 980. On remand, the ALJ should reconsider the full context of Plaintiff's activities when considering his cervical condition.

ORDER REVERSING AND REMANDING THE COMMISSIONER'S
DECISION - 4

     reasoning. He was generally able to complete MSE tasks. He is cognitively able to accept instruction from a supervisor. He does not appear able to consistently negotiate simple social stressors. He tends to become overwhelmed with anger that can lead to aggressiveness. He would struggle to persist. He would be prone to absenteeism due to depression and anxiety. He likely has some deficits due to [activities of daily living] associated with this as well.

Tr. 832-33.

     The ALJ summarized Dr. Widlan's opinion and explained he found some of Dr. Widlan's conclusions to be consistent with the record, but discounted Dr. Widlan's opinions about limitations related to social stressors and absenteeism. Tr. 32-33. The ALJ found Plaintiff's ability to socialize with his friends, shop, and interact appropriately during work retraining was inconsistent with Dr. Widlan's finding that Plaintiff could not consistently negotiate simple social stressors. *Id*. The ALJ also found Dr. Widlan's absenteeism opinion to be unsupported by any evidence in the record especially in light of the lack of mental health treatment history. Tr. 33.

     Plaintiff argues his ability to socialize with friends or with those trying to help him succeed does not show he is not limited in getting along with others in the workplace. Dkt. 10 at 7. However, the ALJ did not entirely reject Dr. Widlan's opinion Plaintiff has limitations in dealing with social stressors. Rather, the ALJ recognized that Plaintiff has limitations in this area and included significant social restrictions in determining RFC by limiting Plaintiff to occasional superficial interaction with co-workers and the public. *See* Tr. 22. Plaintiff fails to show the ALJ assessment about social stressor limitations is unreasonable. The Court accordingly concludes the ALJ did not err in assessing this portion of Dr. Widlan's opinion.

     Plaintiff also challenges the ALJ's rejection of Dr. Widlan's opinion regarding work absenteeism. The ALJ found Dr. Widlan's absenteeism opinion is "not consistent with any evidence of record, especially given the absent mental health treatment record." Tr. 33. Plaintiff

ORDER REVERSING AND REMANDING THE COMMISSIONER'S
DECISION - 5

fails to point to anything in the record that undercuts the ALJ's finding the opinion is not consistent with any evidence of record. As there is nothing showing the ALJ's finding is unsupported, the Court cannot say the ALJ erred.

Plaintiff also argues the ALJ erred in citing to his lack of mental health treatment because he could not receive psychological treatment in the workers' compensation system. Dkt. 10 at 8. The ALJ stated there was no evidence supporting absenteeism, noting an absence of mental health treatment records. By pointing to a lack of treatment records, the ALJ was simply pointing to the fact there are no treatment records showing Plaintiff has absenteeism problems due to mental health issues. The Court cannot say the ALJ unreasonably found the record does not contain anything indicating an absenteeism limitation or anything undermining the ALJ's finding that absenteeism is not supported by the record.

Plaintiff further argues the ALJ improperly held the lack of mental health treatment against him, and thereby implies the lack of treatment records support absenteeism. The Court declines to find a lack of records supports absenteeism, as the Court cannot reweigh the evidence, and in any event would be on thin ice in reaching such a conclusion.

The Court also cannot say the ALJ made a finding that the lack of treatment shows Plaintiff has no absenteeism limitations. The ALJ, as noted above, found the record did not show Plaintiff has an absenteeism limitation and Plaintiff has not shown otherwise. The ALJ's notation included the fact that there are no mental health treatment records that would support the limitations. That notation simply is part and parcel of the fact there is no evidence of record supporting an absenteeism limitation. The Court cannot say the ALJ implied more, i.e., that by not getting treatment, Plaintiff's conduct displayed no absenteeism limitation. The Court accordingly affirms the ALJ's treatment of Dr. Widlan's opinions.

ORDER REVERSING AND REMANDING THE COMMISSIONER'S
DECISION - 6

**CONCLUSION**

The Commissioner's decision is **REVERSED,** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). The ALJ's step two error necessarily affects future RFC and step five findings, and the ALJ may thus have to make step five findings on remand based upon evidence not now before the Court.

Accordingly, on remand, the ALJ shall reconsider Plaintiff's cervical condition at step two, develop the record and reassess Plaintiff's RFC as needed, and proceed to the remaining steps of the disability evaluation process as appropriate.

DATED this 1st day of September, 2022.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge